**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| CHELSEY CRAIG, KYLE LEHAN, CHRISTIAN GILLIKIN, ANNA GREVE and | ) ) ) |
| JULIE ULLETT, on behalf of themselves and others similarly-situated, | ) Case No. 16-CV-00277-SSB-SKB ) |
| Plaintiffs, | ) Judge Sandra S. Beckwith ) ) Magistrate Judge Stephanie K. Bowman |
| v. | ) ) Oral Argument Requested |
| LANDRY'S, INC. d/b/a LANDRY'S SEAFOOD HOUSE - OHIO, INC. and | ) ) ) |
| MCCORMICK & SCHMICK RESTAURANT, CORP. d/b/a MCCORMICK & SCHMICK'S SEAFOOD & STEAKS, | ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION**
**TO STRIKE OR DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**
**AND TO STRIKE COLLECTIVE AND CLASS ALLEGATIONS**

## INTRODUCTION

Plaintiffs' Response in Opposition ("Opposition") takes substantial liberty with the actual allegations in the Second Amended Complaint ("SAC"), mischaracterizes Defendants' motion and motivations, and where it does not misstate the arguments in Defendants' Motion to Dismiss, it either fails to rebut them or ignores them entirely.

*First*, the SAC wholly fails to allege that Landry's jointly employs Plaintiffs.  No Plaintiffs worked at a Landry's location.  The mere allegation of a corporate parent/subsidiary relationship (or citation to a handbook listing two corporate entities) is insufficient to state a claim against a defendant without actual additional factual allegations regarding the purported joint employment.  No such facts are alleged in the SAC.  *Second*, there is not a single allegation in the SAC – or in Plaintiffs' Opposition – that Plaintiffs received less than the full federal minimum wage during any work week.  This omission is fatal to Counts One, Two, and Three. *Third*, neither the Opposition's implicit argument that Plaintiffs were engaged in "dual jobs" nor Plaintiffs' argument invoking the so-called "20 percent rule" in section 30d00(e) of the Department of Labor Field Operations Handbook are supported by any allegation in the SAC. The SAC makes no reference to the dual jobs regulation *or* the Field Operations Handbook. Nevertheless, reliance on the Handbook cannot form the basis of Plaintiffs' claims as a matter of law.  *Fourth*, without further factual allegations, there is nothing "plausible" about the SAC's unjust enrichment allegations, nor does the SAC contain any information providing notice as to the nature of Plaintiffs' claim.  *Fifth*, Plaintiffs seek unavailable injunctive relief under a provision of the Ohio Wage Act which exists solely for the purpose of allowing an employee to obtain records from an employer – but their pleading *does not even* request such records.  *Sixth*, class issues of manageability and adequacy under Rule 23 are directly implicated here, where the SAC pleads causes of action which by their very terms are incapable

of class-wide proof, where Plaintiffs' counsel *employs* one of the class representatives, and where one of Plaintiffs counsel's attorneys admits having improperly solicited potential class members. Due to these significant red flags, especially at such an early juncture in the case, it is in the interest of the Court, the parties, and the putative members of the collective action and class action that a Rule 23 adequacy inquiry be undertaken.

The Court should reject Plaintiffs' attempts to skirt the SAC's pleading defects and their efforts to underplay the impropriety inherent in Plaintiffs' counsel's continued representation of the members of the putative collective action and class action. Defendants' Motion should be granted.

## THE SAC SHOULD BE DISMISSED

## I. THE SAC MUST BE DISMISSED AS TO LANDRY'S BECAUSE PLAINTIFFS INSUFFICIENTLY ALLEGE "JOINT EMPLOYMENT"

Plaintiffs' Opposition does nothing more than reiterate insufficient, conclusory allegations that Defendants are "joint employers." In an effort to overcome the SAC's conclusory allegations, Plaintiffs primarily argue that Landry's jointly employs servers at McCormick & Schmick's locations because McCormick is owned and operated by Landry's as a subsidiary. (*See* ECF No. 21 at 3-4; SAC ¶ 12.) However, a bald allegation of a corporate parent/subsidiary relationship is insufficient as a matter of law to allege a joint employer relationship. *See e.g. In Re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 340 n.25 (W.D. Pa. 2010), *aff'd*, 683 F. 3d 462 (3d Cir. 2012) ("[t]o follow the rationale in [the DOL opinion] letter would mean that virtually all typical parent subsidiary relationships would subject the parent to joint employer status. That rationale has been rejected by several courts."); *see also Cummings v. United Healthcare Servs.*, No. 13-CV-00479, 2014 WL 1302029, at *3 (D. Nev. Mar. 31, 2014) (dismissing parent corporation where plaintiff made

2

conclusory allegations that defendants were joint employers due to parent/subsidiary relationship).

Additionally, Plaintiffs cite what they describe as "public records" as well as an Employee Handbook attached to the SAC as the basis that Landry's is a joint employer of Plaintiffs. However, these so-called "public documents" cannot be considered by the Court for the truth of the matter asserted here. *See, e.g.*, *Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005) (vacating district court judgment and finding that "the website is not a public record of which judicial notice would be appropriate during a motion to dismiss for failure to state a claim"). The majority of courts "have held that the use of such documents is proper only for the fact of the documents' *existence*, and not for the truth of the matters asserted therein." *Id.* (emphasis added) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354-55 (7th Cir. 1995)). Further, in general, a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned. *Id.* Here, Plaintiffs argue that a single excerpt from an Employee Handbook "*expressly* identifies, in word and picture, that 'Landry's' and 'McCormick and Schmick's' comprise a *joint enterprise*." (ECF No. 21 at 4 (emphases added).) Setting aside Plaintiffs' mischaracterization of the excerpt, the Handbook is not a matter of "public record" of which the Court may take judicial notice. *See, e.g.*, *Osborne v. Pinsonneault*, No. 07-CV-002, 2009 WL 1046008, at *9 (W.D. Ky. Apr. 20, 2009) (excluding evidence obtained from "commercial publications" rather than public records or government documents and "[t]hus, the Court cannot verify the information found on these websites for accuracy and authenticity, these documents are not proper candidates for judicial notice.").

In sum, the SAC fails to identify any factual or legal basis for the allegation that Landry's

"jointly employs" Plaintiffs.  Plaintiffs' argument that a joint employer relationship exists simply based on a corporate parent/subsidiary relationship, without more, fails as a matter of law.  So too does Plaintiffs' attempt to supplement the SAC's inadequate factual allegations with purported facts outside the four corners of the SAC.  The SAC must be dismissed as to Landry's.

## II.     COUNTS ONE, TWO, AND THREE FAIL TO STATE COGNIZABLE MINIMUM WAGE CLAIMS

### A.     Plaintiffs' Minimum Wage Claims Must Be Dismissed

#### 1.     Plaintiffs Fail To Allege Any Facts To Support An Unlawful Minimum Wage

As noted in Defendants' Motion, the SAC fails to meet the basic pleadings requirements to state a claim for unpaid minimum wages.  (ECF No. 20-1 at 8-10.)  There is not a single allegation in the SAC – or any citation to one in Plaintiffs' Opposition – that Plaintiffs received less than the full federal minimum wage during any work week.  (*Id.*)  This omission is fatal to Counts One, Two, and Three.  To survive a 12(b)(6) motion to dismiss, a plaintiff asserting a FLSA minimum wage violation must, "at a minimum," allege at least one workweek in which he or she earned less than minimum wage.  *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014), *as amended* (Jan. 26, 2015) (dismissing FLSA lawsuit where "[t]he complaint did not allege facts showing that there was a given week in which [the plaintiff] was entitled to but denied minimum wages or overtime wages.").[1]  Plaintiffs fail to satisfy this requirement.

Rather, in their Opposition, Plaintiffs highlight the following arguments and alleged facts, none of which demonstrate that *any* of the Plaintiffs earned less than minimum wage in at least one workweek:

---

[1] Plaintiffs fail to distinguish *Landers*, which dismissed plaintiff's FLSA claim because "[n]otably absent from the allegations in [plaintiff's] complaint, however, was any detail regarding a given workweek when [plaintiff] worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid minimum wages." *Landers*, 771 F.3d at 646.  Here, the SAC suffers from this precise defect.

4

- "Plaintiffs' SAC includes allegations of their approximate dates of employment." (ECF No. 21 at 7.)

- "The SAC provides the estimated hourly amounts paid to each Plaintiff 'for all work performed.'" (*Id.* at 8)

- "The SAC estimates the amount of time the Plaintiffs and the Putative Class Members spent on non-tipped work." (*Id.*)

- "Defendants failed 'to pay Plaintiffs the full minimum wage *for the non-tipped work* they have performed in workweeks during the relevant time period.'" (*Id.* at 7 (emphasis added).)

- "The SAC alleges that 'during all times material to this complaint, Defendants jointly paid Plaintiffs and the Putative Class Members at an hourly rate less than that of the Ohio and federal minimum wage rates *for non-tipped workers*.'" (*Id.* at 8-9 (emphasis added).)

Notably, however, the SAC does not contest that Plaintiffs received at least the full federal minimum wage of $7.25, through a combination of the Section 203(m) tipped wage and tips in any workweek. Contrary to Plaintiffs' argument, the FLSA *does not require* that Defendants pay the full minimum wage for the time allegedly spent on non-tipped work performed in workweeks during the relevant period. Rather, the law is clear that "[r]egardless of the frequency with which non-tipped work was assigned, *no minimum wage claim is stated against [Defendants] unless [Plaintiffs'] average wage for the workweek, including tips, fall below the minimum wage*." *Richardson v. Mountain Range Restaurants LLC*, No. 14-CV-1370, 2015 WL 1279237, at *6 (D. Ariz. Mar. 20, 2015) (emphasis added); *Montijo v. Romulus, Inc.*, No. 14-CV-264, 2015 WL 1470128, at *8 (D. Ariz. Mar. 31, 2015); *Hart v. Crab Addison, Inc.*, No. 13-CV-6458, 2014 WL 2865899, at *11 (W.D.N.Y. June 24, 2014) (servers did not state a FLSA claim based on their allegations that they engaged in non-tipped duties more than 20% of their shift because they had shown no minimum wage violation on workweek basis).

Notably, Plaintiffs' Opposition does not address Defendants' discussion of *Richardson v. Mountain Range Restaurants LLC*, a case which is directly on point. Plaintiffs' silence is telling.

5

Just as in *Richardson*, the SAC here fails to allege even in "conclusory fashion that [plaintiffs were] paid less than minimum wage." *Richardson*, 2015 WL 1279237 at *6. Plaintiffs' "tasks . . . that allegedly were both related to and unrelated to [plaintiffs'] occupation as a server . . . do not state a minimum wage claim since the pleading never alleges that during any particular week, the average of her hourly wages was less than the federal minimum wage." *Id.* (citation omitted). Thus, Counts One, Two, and Three must be dismissed.

### 2. Plaintiffs Were Not Engaged In Dual Jobs

In an effort to remedy the SAC's dispositive failure to allege that Plaintiffs received less than the full federal minimum wage during any work week, Plaintiffs abandon the SAC's allegations and theories of relief, and implicitly argue in their Opposition that Plaintiffs were actually engaged in "dual jobs." Plaintiffs' argument is unsupported by any allegation in the SAC. Plaintiffs cannot amend the SAC in response to a motion to dismiss. *See, e.g.*, *Freberg v. Marquette Gen. Health Sys.*, No. 13-CV-316, 2014 WL 1028891, at *3 (W.D. Mich. Mar. 17, 2014) (citing *Guzman v. United States Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012)).

Moreover, Plaintiffs' "dual jobs" argument fails. Under the dual jobs regulation, where an employee is engaged in two separate occupations, one tipped and one not tipped, the employer may take a tip credit only for the tipped occupation. 29 C.F.R. § 531.56(e). The examples used by the DOL in the regulation are instructive, as they distinguish between a scenario where an employee engages in two *distinct* occupations, as opposed to an employee who engages in a *single* occupation but performs some duties that do not directly generate a tip:

> Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his

6

> employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. ***Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips***.

29 C.F.R. § 531.56(e) (emphasis added). Thus, under the dual jobs regulations, an employer may take a tip credit for the time the employee spends in the tipped occupation, even if the tasks being performed "are not themselves directed toward producing tips." *Id.*

The Court need look no further than the recent decision in *Montijo v. Romulus, Inc.*, No. 14-CV-264, 2015 WL 1470128 (D. Ariz. Mar. 31, 2015). Just as Plaintiffs do here, the plaintiffs in *Montijo* alleged that IHOP violated the FLSA's minimum wage provision by requiring its servers to spend a "substantial" amount of time on non-tipped duties unrelated to their occupation, while still being paid at the lower tip credit rate. *Id.* at *2-3. The duties at issue in *Montijo* included taking out the trash, scrubbing walls, cleaning the restroom and dusting. *Id.* at *1. The court in *Montijo* found the plaintiffs' claims to be both "constitutionally and statutorily meritless." *Id.* at *15. In reaching this conclusion, the court in *Montijo* aptly noted that "a server's occupation involves side work, including the miscellaneous cleaning duties." *Id.* at *13. The performance of such side work does not transform one occupation – the server position – into two distinct occupations. *Id.* Accordingly, "IHOP is entitled to take the tip credit for the entirety of the tipped server occupation." *Id.*

Other courts have reached the same conclusion. In *Pellon v. Business Representation International, Inc.*, 528 F. Supp. 2d 1306 (S.D. Fla. 2007), *aff'd*, 291 Fed. App'x 310 (11th Cir.

7

2008), airport skycaps argued that they should have been paid full minimum wage for certain tasks that did not produce tips.  The court in *Pellon* relied on the dual jobs regulation and found that skycaps "are most similar to waitresses under [DOL] regulations," as opposed to persons dually employed as waiters and maintenance men.  *Id.* at 1313.  The court in *Pellon* found that plaintiffs' duties were part of the normal duties of a skycap, and not those of another occupation, even if there was some overlap among tasks between different jobs.  *Id.*  That is, at worst, they were "related duties in an occupation that is a tipped occupation" that "need not by themselves be directed toward producing tips."  *Id.* (quoting 29 C.F.R. 531.56(e)).  Because the plaintiffs were not engaged in dual jobs, the court granted summary judgment.  *Id.* at 1315.

Here, the SAC provides no factual basis to conclude that Plaintiffs were employed in any capacity other than in a single tipped occupation.  The SAC expressly admits that Plaintiffs were employed as servers who were paid a "base wage" in addition to tips received by Plaintiffs.  (SAC ¶¶ 21-22, 82, 98.)  Moreover, in addition to the express language of the statute indicating that "a waitress [or server] who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses" is not working "dual jobs" for purposes of the statute, courts have determined that the very duties Plaintiffs mischaracterize as "non-tipped"[2] – are in fact the duties of a "server."  *Montijo*, 2015 WL 1470128, at *13.[3]  Thus, Plaintiffs' minimum wage claims fail, and Counts One, Two and Three must be dismissed.

---

[2] The SAC describes the "non-tipped" duties of Plaintiffs as "setting up bar chairs, laying mats down in the kitchen, preparing tea and coffee, shining glasses and silverware, setting up the soda machine, transporting and/or stocking food and equipment, turning on kitchen appliances and/or cleaning areas of the restaurant" (SAC ¶¶ 84, 100) and "washing and polishing silverware, stocking butter, storing items in the kitchen cooler, cleaning kitchen countertops, sweeping floors in the kitchen and/or wiping tables" (*Id.* ¶¶ 86, 102.)

[3] Indeed, there is no meaningful distinction between the duties at issue in *Montijo* and the ones that form the basis of Plaintiffs' minimum wage claims.  If anything, the duties the court analyzed in *Montijo* are *more* onerous than the ones alleged in the SAC.

### 3.   The Department Of Labor's Field Operations Handbook Cannot Form The Basis Of Any Viable Claims

Plaintiffs challenge Defendants' statutory right to pay a tip credit wage and argue that Defendants violated section 30d00(e) of the Department of Labor Field Operations Handbook . (ECF No. 21 at 5-6.)  Again, Plaintiffs' arguments are unsupported by any allegation in the SAC. The SAC makes no reference to the Field Operations Handbook at all.  Again, Plaintiffs cannot amend the SAC in their response to a motion to dismiss.  *See, e.g.*, *Freberg*, 2014 WL 1028891 at * 3.  Moreover, Plaintiffs' argument is without merit.

The DOL sub-regulation purports to place a twenty percent limitation on the amount of related duties that a tipped employee can perform.  The sub-regulation states:

> Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities).  For example a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers.  However, ***where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing preparation work or maintenance, no tip credit may be taken for the time spent in such duties***.

Department of Labor Field Operations Handbook § 30d00(e)(emphasis added).

Plaintiffs implicitly argue that Defendants violated the italicized language by requiring Plaintiffs to perform non-tipped labor related to their positions as servers in excess of twenty percent of their regular workweek.  Plaintiffs' argument is profoundly flawed and fails for at least three separate reasons, including: (1) the twenty percent concept relied upon by Plaintiffs as the basis for their minimum wage claim appears nowhere in the text of the statute or the regulations implementing it; (2) the Field Operations Handbook is not binding authority; and (3)

9

even if a violation of the Field Operations Handbook sub-regulation could form the basis of Plaintiffs' minimum wage claims, Plaintiffs do not actually allege facts demonstrating a violation.

First, the FLSA nowhere limits the amount of time a tipped employee can spend on incidental work.  Nor do the DOL's regulations "cap the amount of hours that servers may perform related non-tipped duties before becoming classified as a dual employee, having both tipped and non-tipped occupations." *Schaefer v. P.F. Chang China Bistro, Inc.*, No. 14-CV-185, 2014 WL 3809069, at *4 n. 5. (D. Ariz. Aug. 1, 2014) (*Schaefer I*).  Rather, the dual jobs regulation, 29 C.F.R. section 531.56(e), specifically identifies a server's time spent "cleaning, toasting bread, making coffee and occasionally washing dishes or glasses" as duties that are *related to his occupation*.  Notably, "neither Congress, the Supreme Court, nor the Ninth Circuit Court of Appeals has recognized [] a purported cause of action" based on sub-regulation section 30d00(e).  *Richardson*, 2015 WL 1279237 at *6.

Indeed, courts have considered and repeatedly rejected the concept that a plaintiff may establish that he worked in a non-tipped occupation, based on a task-by-task analysis of related non-tipped work, as proposed by sub-regulation section 30d00(e).  *See Schaefer v. P.F. Chang China Bistro, Inc.*, No. 14-CV-00185, (D. Ariz. Mar. 20, 2015) (*Schaefer II*) (denying plaintiffs leave to amend because dual jobs allegations based on deference to the DOL's sub-regulation do not state a FLSA minimum wage violation claim); *Montijo*, 2015 WL 1470128, at *15 (finding plaintiffs' minimum wage claim based on sub-regulation section 30d00(e) to be "constitutionally and statutorily meritless"); *Richardson*, 2015 WL 1279237, at *10 (same).  Rather, if a plaintiff meets the criteria for working in a tipped occupation – such as receiving more than $30 a month in tips – "no minimum wage claim is stated . . .  unless [plaintiff's] average wage for the week,

including tips, fell below the minimum wage." *See Schaefer I*, 2014 WL 3809069, at *5. For the reasons explained in Section II.A.1, *supra*, Plaintiffs cannot meet this burden.

To this end, *Richardson v. Mountain Range Restaurants LLC* – cited in Defendants' Motion and which Plaintiffs ignore completely – is controlling. 2015 WL 1279237, at *8. The plaintiff in *Richardson* mounted an argument virtually identical to the one Plaintiffs offer here. Similar to Plaintiffs, the plaintiff in *Richardson* failed to state a FLSA minimum wage violation because her average wage for the workweek, including tips, did not fall below the minimum wage. *Id*. at *6. Richardson, like Plaintiffs, also attempted to avoid dismissal of the claim by asking the Court to defer to DOL sub-regulation section 30d00(e). The court in *Richardson* refused to give any deference to the sub-regulation. *Id.* at *6. The court observed that the controlling regulation – 29 C.F.R. section 531.56(e) (dual jobs) – unambiguously "allows for tipped food service personnel to perform related and incidental tasks to their main occupation without becoming a dual job employee." *Id*. The sub-regulation, therefore, stood in direct contradiction to "the statute's and the regulation's clear pronouncement that employers are entitled to utilize the tip credit for employees in tipped occupations." *Id*. Consequently, the court correctly declined to follow what amounted to mere "additional DOL informal commentary." *Id*.[4]

Second, the Supreme Court has held that agency interpretations such as the Field Operations Handbook are entitled to deference "only when the regulation's language is ambiguous." *Christensen v. Harris County*, 529 U.S. 576, 587-88 (2000). Here, there is no ambiguity because the dual jobs regulation has been held to be "not ambiguous" on at least three occasions. *See Richardson*, 2015 WL 1279237, at *6 (dual jobs regulations "are not ambiguous;

---

[4] *See also Schaefer v. P.F. Chang China Bistro, Inc.*, No. 14-CV-00185 (D. Ariz. Mar. 20, 2015); *Montijo*, 2015 WL 1470128, at *9.

therefore, the Court need not consider additional DOL informal commentary"); *Montijo*, 2015 WL 1470128, at *9 (D. Ariz. Mar. 31, 2015) (same); *see also Schaefer v. P.F. Chang China Bistro, Inc.,* No. 14-CV-00185 (D. Ariz. Mar. 20, 2015). Absent any ambiguity in the dual jobs regulation, reference to the Field Operations Handbook (or, indeed, any source other than the regulation itself) is impermissible.

Nevertheless, Plaintiffs urge this Court to give automatic, unrestricted deference to the Field Operations Handbook to resolve the non-existent ambiguity. (*See* ECF No. 21 at 5.) However, even if the dual jobs regulation were ambiguous, the Field Operations Handbook is demonstrably *not* binding authority. *See, e.g.*, *Probert v. Family Centered Servs. of Alaska, Inc*., 651 F.3d 1007, 1012 (9th Cir. 2011) ("it does not appear to us that the [Field Operations Handbook] is a proper source of interpretive guidance"). Indeed, the Department of Labor itself recognizes the limited import of the Field Operations Handbook. The preface to the Field Operations Handbook negates any hint of its status as a binding pronouncement of DOL interpretation, and explicitly states that it "is *not* used as a device for establishing interpretative policy." *See* Dep't of Labor, http://www.dol.gov/whd/FOH/ (last visited June 1, 2016) (emphasis added). The Opposition nowhere explains how the Court can give the Handbook interpretive force the Department of Labor expressly disclaims.

Third, even if the so-called "20 percent rule" were an actual "rule" – and it is not – the SAC does not even allege that Plaintiffs spent "in excess of 20 percent" of their workweek engaged in unrelated labor. Rather, for the first time in their Opposition, Plaintiffs argue that "a conservative average of the foregoing estimated time sufficiently alleges that Plaintiffs spent approximately 27% to 30% performing general preparation or maintenance tasks." (ECF No. 21 at 6.) Plaintiffs' argument is, of course, just that. It is an argument, unsupported by the

allegations in the SAC.  The Court should disregard Plaintiffs' attempt to amend the SAC in their Opposition.[5]  *See, e.g.*, *Freberg*, 2014 WL 1028891 at * 3.

As a matter of arithmetic, to allege an excessive percent of their workweek allegedly spent on unrelated labor, Plaintiffs must allege a numerator *and* a denominator.  The Opposition presumably totes up the pre- and post-shift work allegedly performed (i.e., the numerator), but fails to allege how much *total* time was worked (i.e., the denominator).[6]  Thus, Plaintiffs' attempt to cobble together a "a conservative average" is as baseless as their reliance on the non-existent "rule" supposedly violated by that "estimated time."

## III.  PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT FAILS

Plaintiffs' Opposition implicitly acknowledges that the SAC's allegations regarding their unjust enrichment claim are doubtful, but suggests that the Court should still hold that their illogical claims are sufficiently plausible.  (*See* ECF No. 21 at 8.)  First, Plaintiffs' Opposition does nothing to distinguish Defendants' (lawful) practices from those blessed by the Sixth Circuit in *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999) ("[A]s a matter of

---

[5] For this reason, the cases cited by Plaintiffs for the proposition that courts generally "endorse" the twenty percent rule are distinguishable and lend no merit to their position that the amount of time spent on the incidental duties at issue should be capped at twenty percent of their workweek or plaintiffs must be compensated at minimum wage – which, of course, is not even the theory of relief in the SAC, demanding as it does that *all* time spent on such duties be compensated at the full minimum wage.  *See, e.g.*, *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) (relying on cases where employees spent an entire shift or substantial, distinct period of time performing non-tipped duties).  Further, the allegations in *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014), stand in stark contrast to the SAC.  There, the tipped employees' duties included "cleaning bathrooms including toilets, sinks, mirrors and urinals; wiping down walls; polishing paneling with Pledge or lemon oil; mopping or scrubbing floors; and loading the dishwasher."  The SAC is devoid of any allegation that Defendants subjected Plaintiffs to extensive duties.

[6] Plaintiffs fail to explain their "conservative average" in the Opposition and fail to hint at it in the SAC, and thus the Court and Defendants are left to guess at the arithmetic.  One possible explanation for Plaintiffs' counsel's calculation is that it appears  to be the result of: (1) assuming (without alleging in the SAC) that employees always worked a 7.5 hour shift; (2) assuming (without alleging in the SAC) that each 7.5 hour shift comprised the entire time the restaurant was open for business; and (3) assuming (without alleging in the SAC) that employees always performed either: (A) one hour of work prior to the restaurant opening *and* one hour of work after the restaurant closed during every 7.5 hour shift (which would equal approximately 27%); or (B) forty five minutes of work prior to the restaurant opening *and*  ninety minutes of work after the restaurant closed during every 7.5 hour shift (which would equal approximately 30%).  Plaintiffs' assumptions and calculations are based on argument in the Opposition, not allegations in the SAC.

13

law, an employer may subtract a sum from an employee's charged gratuity which reasonably compensates it for its outlays sustained in clearing that tip," and employees are only "entitled to receive the cash proceeds of the charged tip *net of liquidation expenses* . . . .").

Second, the Opposition and the SAC are bereft of any explanation of Plaintiffs' claim that Defendants jointly reported and required Plaintiffs to report the "pre-deduction amount of credit card tips received as income on their state and federal tax filings," and that "Defendants avoided any tax liability associated with these costs, by claiming them as tax-deductible business expenses." (SAC ¶¶ 120–22.) The SAC does not contain (and the Opposition does not cite) any facts detailing the workings of Defendants' supposed (and illogical) requirement that Plaintiffs report an inflated amount "on their state and federal tax filings," or how such a requirement was (or could have been) enforced. Notably, Plaintiffs' Opposition does *nothing* to clarify how this system could ever have been implemented, insofar as it would require that Defendants falsified W-2 forms for all of its tipped employees, and reported as income amounts larger than those employees were actually paid, that each employee complied with Defendants' "requirement," and reported an amount *they were not actually paid* "on their state and federal tax filings."

While the Court must take any *well-pled factual* allegations in the SAC as true, the SAC must still state a claim that is plausible where the alleged facts themselves are doubtful – as they clearly are here. *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 555 (2007). Without some explanation as to the bizarre stratagem allegedly in place, Plaintiffs' unjust enrichment claim is insufficiently plausible to withstand dismissal.

## IV. COUNT FIVE IS FATALLY FLAWED

It is well-recognized that a complaint containing "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" is insufficient. *Twombly*, 550

U.S. at 555-56 (internal citations and quotations omitted).  As applied here, Count Five is insufficient because Plaintiffs allege no facts identifying the employees who requested a pay stub, or when, or how, or to whom, or at which restaurant such request was made.[7]  Rather, Plaintiffs' Opposition merely argues (without support) that the SAC need only provide "the precise locations and the approximate dates at which each Plaintiff worked during the relevant time period."  (ECF No. 21 at 10.)  Under Plaintiffs' argument, Defendants are left to guess as to which Plaintiffs requested a pay stub and when, and thus whether those requests were fulfilled within the statutory time period (or some other deadline), as required to state a cause of action under the statute.  (ECF No. 21 at 10.)  This is plainly insufficient under *Twombly*.  Absent any additional facts to support their claim, Count Five fails.

Further, Plaintiffs' Opposition does not attempt to counter Defendants' argument that the SAC seeks unavailable injunctive relief.  Plaintiffs seek "[a]n injunction relief [sic] prohibiting Defendants from refusing to provide their employees wage documents . . . , and requiring Defendants to comply with . . .  the Ohio Wage Act going forward."  (SAC at 26 ¶ D (Prayer for Relief).)  The purpose of the statutory provision is to ensure employees can obtain records from their employers.  However, the SAC does not seek the records Plaintiffs allegedly requested but were denied.  Plaintiffs' request in the SAC for litigation costs, expenses, and attorneys' fees for the purported violations of the Ohio Wage Act, O.R.C. § 4111.14(G), despite *not* seeking to obtain the actual records the statute governs, is non-sensical.  In essence, Plaintiffs request an award for prevailing under a statute – which exists for the sole purpose of allowing a plaintiff to obtain records from an employer – but *do not seek* those records.  The injunctive relief the SAC seeks is clearly not provided for in the statute, and

---

[7] The SAC alleges only that "Plaintiff Craig and other members of the Ohio Sub-class requested copies of their paystubs" and requested the information "on multiple occasions."  (*See* SAC ¶ 134.)

the Opposition fails to explain how Plaintiffs' are entitled to attorneys' fees if they do not obtain any requested records under the statute. *See e.g. Lacy v. Reddy Elec. Co.,* No. 11-CV-52, 2013 WL 3580309, at *15 (S.D. Ohio July 11, 2013) *(* "[i]f an employee is forced to file suit *to obtain the requested records*, the employer must pay reasonable attorneys' fees and costs") (emphasis added).

## THE SAC'S COLLECTIVE AND CLASS ALLEGATIONS SHOULD BE STRICKEN

Plaintiffs' Opposition fails to demonstrate that Counts Four and Five are susceptible to class-wide proof. Moreover, Plaintiffs have not demonstrated that Plaintiff's counsel can adequately represent the members of the putative collective actions and putative class actions.

## I.     COUNTS FOUR AND FIVE ARE UNMANAGEABLE

Plaintiffs' argument that Counts Four and Five are not "complex" enough to make the claims unmanageable as a class action misstates the standard that courts utilize in determining whether to strike class allegations. The standard is not whether claims are "complex," but rather whether individualized inquiries are necessary which overwhelm common questions. *See, e.g.*, *Schumacher v. State Automobile Mut. Ins. Co.,* No. 13-CV-00232, 2015 WL 421688, at *5-7 (S.D. Ohio Feb. 2, 2015) (striking class allegations where "individualized issues will indeed 'overwhelm' any common questions" where unique determinations of liability . . . would result in "countless mini-trials").[8]

Plaintiffs argue that because "Defendants should have ready access to Plaintiffs' wage documents" that Count Four is "manageable." (ECF No. 21 at 13.) However, this argument ignores that Plaintiffs' allegations will require, at a minimum, establishing what each employee *actually* reported "as income on their state and federal tax filings." This information is in

---

[8] *See also, e.g.*, *Sauter v. CVS Pharmacy, Inc.*, No. 13-CV-846, 2014 WL 1814076, at *2-3 (May 7, 2014); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011); *Loreto v. Procter & Gamble Co.*, No. 09-CV-815, 2013 WL 6055401, at *5 (S.D. Ohio Nov. 15, 2013).

Plaintiffs' "state and federal tax filings," which are not (and are not alleged to be) in the possession of Defendants.  Thus, determination of whether Defendants were unjustly enriched at Plaintiffs' expense will demand individualized inquiry for each class member (and for every paycheck for each class member) and require access to documentation which is not in Defendants' possession, custody, or control.  Critically, on the face of Plaintiffs' theory, individualized issues overwhelm common questions as a matter of law *regardless* of who has possession of the documents necessary to resolve these thousands of individualized inquiries.

Plaintiffs mount even less resistance to Defendants' argument that Count Five – alleging a violation of O.R.C. § 4111.14(G) – demands inquiry into numerous factual elements which are not susceptible to class-wide proof.  To prove this claim on a class-wide basis, each employee in the class (potentially thousands of employees) will have to demonstrate that they "requested copies of their paystubs," and that their employer failed to provide the information requested within thirty business days (or by some other deadline).  These are precisely the kind of individualized inquiries which are unsuitable to class treatment.

## II.  ALL COLLECTIVE AND CLASS ALLEGATIONS MUST BE STRICKEN BECAUSE PLAINTIFF' COUNSEL IS INADEQUATE

Plaintiffs' argument that their adequacy as class counsel is not at issue because such issues "are not at issue at this stage of the proceedings" is without merit.  The Opposition goes to great lengths to distinguish the present situation from the numerous cases where the potential for conflict (and thus Plaintiffs' counsel's inadequacy) is obvious – such as situations where (as here) Plaintiffs' counsel *employs* one of the class representatives.  In so doing, Plaintiffs ignore the fact that the SAC alleges claims on behalf of a putative Rule 23 class as well as putative collective actions, and therefore, Plaintiff counsel's adequacy to represent the best interests of the members of the putative collective action and/or putative class action is directly at issue –

17

even at the outset, as the issue never goes away or is only ripe later in the litigation. The text of Rule 23 makes clear that certification under Rule 23 should be addressed "at an early practicable time after a person sues or is sued as a class representative" Fed R. Civ. P. 23(c)(1)(A). Here, it is in the interest of the Court and the parties that Rule 23's adequacy inquiry be undertaken now, where the admitted misconduct of Plaintiffs' counsel is squarely at issue.

In an attempt to elide the clear conflict of interest stemming from Plaintiff Craig's employment by Plaintiffs' counsel, Plaintiffs merely state that Plaintiff Craig "will not share legal fees" with the firm in the event that there is a recovery. (ECF No. 21 at 19-20.) Even if the assurance is literally true (meaning that Plaintiff Craig will not be directly paid a portion of the fees), it cannot unwind the inherent conflict of interest resulting from the employment relationship. In fact, even if Ms. Craig no longer worked for Plaintiffs' counsel *at all*, the prior employment relationship would still raise adequacy concerns. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014) ("There ought therefore to be a genuine arm's-length relationship between class counsel and the named plaintiffs. We . . . wish to remind the class action bar of the importance of insisting that named plaintiffs be genuine fiduciaries, uninfluenced by family ties (as in *Eubank*) or friendships.")

Additionally, and contrary to Plaintiffs' argument, Mr. Taylor's admittedly improper contact with members of the putative class action and collective actions was not brought to the Court's attention for "punitive measures and/or procedural gain," or as a "public reprimand." (ECF No. 21 at 23.) Defendants agree that Ohio's disciplinary body is a proper forum to address Mr. Taylor's admitted misconduct. However, despite the Opposition's protestations to the contrary, *see* ECF No. 21 at 23, that conduct has *direct* ramifications on this case and is squarely within the Court's purview, because Plaintiffs' counsel must act as a fiduciary for the members

of the entire putative collective action and putative class action.  *See Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917-18 (7th Cir. 2011) (citation omitted) (noting that "[m]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification").[9]

Finally, Defendants were not obligated, as Plaintiffs suggest, to file their motion under seal to the extent that it implicated the admitted misconduct of Mr. Taylor.  (ECF No. 21 at 23.) Despite not having filed under seal or seeking leave to do so, Plaintiffs make a post hoc request in their Opposition that the Court order Defendants' Motion, Plaintiffs' Opposition, and this Reply sealed.  This request, such as it is, must be denied.  First, Plaintiffs failed to comply with S. D. Ohio Civ. R. 5.2.1.  Per Local Rule 5.2.1, "parties cannot file documents under seal without leave of Court," and "[t]he Court may strike any document filed under seal if the filing party failed to obtain leave of Court."  Rather than complying with the local rules, Plaintiffs improperly make this request to seal a filing they have already made public.  Had Plaintiffs wished to file their Opposition under seal, they were required to seek leave to do so.

Second, Plaintiffs' request to seal does not even attempt to meet the heightened burden justifying non-disclosure of judicial records.  The Court "has supervisory power over its own records and files," *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978), and this authority includes allowing parties to file certain documents under seal.  *See* Fed. Rule Civ. Proc. 26(c).  The Court, however, must balance this power with the "long-established legal tradition" of public access to court documents.  *Brown & Williamson Tobacco Corporation v. Federal Trade Commission*, 710 F.2d 1165, 1177 (6th Cir. 1983). "Only the most compelling reasons can justify non-disclosure of judicial records."  *In Re Knoxville NewsSentinel Co., Inc.*, 723 F.2d

---

[9] *See also In Re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013) (courts "must carefully scrutinize" whether the fiduciary obligations of class counsel to the class have been met); *Eubank v. Pella Corp.*, 753 F.3d 718, 724 (7th Cir. 2014).

19

470, 476 (6th Cir. 1983).  Here, Plaintiffs do not even attempt to satisfy this heightened burden. In fact, Plaintiffs do not offer a *single* reason why any of the requested filings (or portions thereof) could be or must be sealed.  Instead, Plaintiffs argue that Defendants should have unilaterally approached Plaintiffs to inquire about sealing materials directly relating to the issues of the case (Rule 23 adequacy and the improper solicitation of Defendants' employees in violation of the Rules of Professional Conduct), despite Plaintiffs' counsel openly admitting the misconduct, providing no indication that such materials were confidential – under a protective order or otherwise – and then arguing in the Opposition that Mr. Taylor's withdrawal remedied any harm.  Plaintiffs' request to seal is procedurally and legally deficient and must be denied.

## THE SAC VIOLATES FEDERAL RULE 15 AND SHOULD BE STRICKEN

Plaintiffs' Opposition completely misconstrues Rule 15 and the parties' discussions. Rule 15 is clear that a party may amend its pleadings *once* "as a matter of course,"  and thereafter may amend its pleading "*only* with the opposing party's written consent or the court's leave."  *See* Fed. R. Civ. P. 15(a)(1) & (2) (emphasis added).  Absent *actually* requesting and receiving Defendants' "written consent," Plaintiffs cannot satisfy Rule 15(a)(2), and Plaintiffs cite no contrary authority.  Such consent was clearly *not* given to Plaintiffs, because it was never requested.  In fact, *Defendants* requested that *Plaintiffs* seek leave, which they now appear to finally have done in their Opposition.  (*See* ECF No. 21 at 26.)  In sum, the SAC was filed in violation of the Federal Rules, and should be stricken.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully ask the Court to dismiss the Second Amended Complaint, to strike Plaintiffs' collective and class allegations, or, in the alternative, to strike Plaintiffs' Second Amended Complaint under Fed. R. Civ. P. 15(a)(2), and to grant any other such relief it finds proper.

27105099v.7

DATED:  June 6, 2016                    Respectfully submitted,


                                        SEYFARTH SHAW LLP


                                        */s/ Gerald L. Maatman, Jr.*

                                        Christina M. Janice (OH Bar No. 0055313)
                                        Gerald L. Maatman, Jr.*
                                        Peter J. Wozniak*
                                        Alex W. Karasik*
                                        SEYFARTH SHAW LLP
                                        131 S. Dearborn Street - Suite 2400
                                        Chicago, IL 60603
                                        Telephone:     (312) 460-5000
                                        Facsimile:     (312) 460-7000
                                        Email:         gmaatman@seyfarth.com
                                                       cjanice@seyfarth.com
                                                       pwozniak@seyfarth.com
                                                       akarasik@seyfarth.com

                                        *Admitted Pro Hac Vice*

                                        **Attorneys for Defendants Landry's, Inc. d/b/a
                                        Landry's Seafood House - Ohio, Inc. and
                                        McCormick & Schmick Restaurant, Corp. d/b/a
                                        McCormick & Schmick's Seafood & Steaks**

27105099v.7

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 6, 2016, I electronically filed the foregoing **DEFENDANTS'**

**REPLY IN SUPPORT OF THEIR MOTION TO STRIKE OR DISMISS PLAINTIFFS'**

**SECOND AMENDED COMPLAINT AND TO STRIKE COLLECTIVE AND CLASS**

**ALLEGATIONS**. All parties will receive service of this document through the Court's

electronic filing system and may access the filing through the Court's system.


                                 */ s/  Gerald L. Maatman, Jr.*
                                    Gerald L. Maatman, Jr.

27105099v.7